| | |
|---|---|
| RITA W.,[1] | ) |
| | ) |
|             **Plaintiff,** | ) |
| | ) |
| vs. | )     **Case No. 17-cv-1157-JPG** |
| | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
|             **Defendant.** | ) |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for disability benefits in February 2014, alleging disability as of February 13, 2008. She later amended the alleged onset date to December 31, 2011, the last date on which she was insured for DIB. After holding an evidentiary hearing, ALJ Nathaniel Plucker denied the application on January 5, 2017. (Tr. 15-25). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises only one issue, that the ALJ erred in not designating her depression as a severe impairment.

## Legal Standards

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order to protect her privacy. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

To qualify for benefits, a claimant must be "disabled" pursuant to the Social Security Act. The Act defines a "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must result from a medically demonstrable abnormality. 42 U.S.C. § 423(d)(3). Moreover, the impairment must prevent the plaintiff from engaging in significant physical or mental work activity done for pay or profit. 20 C.F.R. § 404.1572.[2]

Social Security regulations require an ALJ to ask five questions when determining whether a claimant is disabled. The first three questions are simple: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe physical or mental impairment; and (3) whether that impairment meets or is equivalent to one of the listed impairments that the regulations acknowledge to be conclusively disabling. 20 C.F.R. § 404.1520(a)(4); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). If the answers to these questions are "yes," then the ALJ should find that the claimant is disabled. *Id.*

At times, an ALJ may find that the claimant is unemployed and has a serious impairment, but the impairment is neither listed in nor equivalent to the impairments in the regulations—failing at step three. If this happens, then the ALJ must ask a fourth question: (4) whether the claimant is able to perform his or her previous work. *Id.* If the claimant is not able to, then the burden shifts to the Commissioner to answer a fifth and final question: (5) whether the claimant is capable of performing *any* work within the economy, in light of the claimant's age, education, and work

---

[2] The legal standards for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) are largely the same. The above paragraph in this order cites the relevant statutory provisions for DIB, while the SSI provisions are located at 42 U.S.C. §§ 1382c(a)(3)(A), 1382c(a)(3)(D), and 20 C.F.R. § 416.972. Most citations herein are to the DIB regulations out of convenience, but also apply to SSI challenges.

experience. If the claimant cannot, then the ALJ should find the claimant to be disabled. *Id.*; *see also Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

A claimant may appeal the final decision of the Social Security Administration to this Court, but the scope of review here is limited: while the Court must ensure that the ALJ did not make any errors of law, the ALJ's findings of fact are conclusive as long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable person would find sufficient to support a decision. *Weatherbee*, 649 F.3d at 568 (citing *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)). The Court takes into account the entire administrative record when reviewing for substantial evidence, but it does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). But even though this judicial review is limited, the Court should not and does not act as a rubber stamp for the Commissioner. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010).

## The Decision of the ALJ

ALJ Plucker followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the amended alleged onset date and that she was insured for DIB only through December 31, 2011. He found that plaintiff had severe impairments of fibromyalgia, obesity, and degenerative joint disease of the knees. He found that her depression was not a severe impairment prior to the date last insured.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the light exertional level, limited to no climbing of ladders, ropes, or scaffolds; occasional

climbing of stairs and ramps; and occasional stooping, kneeling, crouching, and crawling.

Based on the testimony of a vocational expert, the ALJ concluded that plaintiff could do her past work as a secretary.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the point raised by plaintiff.

### 1.      Agency Forms

Plaintiff amended her alleged onset date to December 31, 2011.   (Tr. 186).

Plaintiff was born in 1956.   She was 55 years old on the date last insured.   (Tr. 187).   A prior application had been denied as of November 30, 2010.   (Tr. 187).   She had worked as a secretary from 1995 to February 2008.   (Tr. 191).

### 2.      Evidentiary Hearing

Plaintiff was represented by an attorney at the evidentiary hearing in November 2016. (Tr. 32).   Counsel noted that the November 2010 denial of the prior application had been based in part on the lack of treatment by a mental health professional and lack of psychiatric medications. (The ALJ's decision on the prior application is not in the record.)   Counsel stated that plaintiff's primary care physician prescribed Effexor in August 2011, suggesting that her depression had worsened.   (Tr. 35).

Plaintiff last worked in 2008.   (Tr. 38).

Plaintiff testified that she had depression for "quite a few years."   She said, "It's been getting worse and I can't seem to break free of it anymore."   She started seeing a counselor in early 2014.   (Tr. 48).   Under questioning by her attorney, plaintiff testified that her primary care

physician, Dr. Robacker, prescribed Effexor in August 2011. She had been on Effexor in the past. A lot of her problem was that she didn't get along with her husband, and she had nowhere to go because she had no income. Her dosage was doubled in December 2011 because she was feeling depressed, angry, and hurt, and she had a lot of rage. Plaintiff said that her depression has continued to get worse since then. (Tr. 50-52).

A vocational expert (VE) also testified. The ALJ asked him a hypothetical question which corresponded to the ultimate RFC findings. The VE testified that this person could do plaintiff's past work as a secretary. If she were also limited to simple, routine tasks and only simple decisions, her past work would be precluded. (Tr. 53-55).

### 3. Medical Records

Plaintiff saw a doctor for knee pain back in March 2007. In paperwork that she filled out at that office, she indicated she had depression. She was taking Effexor 150 mg per day. (Tr. 514-515).

Plaintiff saw her primary care physician, Dr. Robacker, fairly regularly. Among other problems, she was treated for fibromyalgia, depression, and high blood pressure. A note from June 2007 stated that her depression was stable on Effexor and Trazodone. (Tr. 328). In December 2010, Dr. Robacker noted that she was "upset that her disability was refused" and she felt that his office "did not represent her well in the medical record." (Tr. 283).

Plaintiff saw Dr. Robacker in August 2011. She had "a long course of feeling down and irritable with family. Thinks depressed. Off Effexor. Very angry. No suicidal or homicidal thoughts." On exam, she was in no acute distress and was oriented to person, place, and time. Dr. Robacker prescribed Effexor 75 mg per day, 30 tablets, with 2 refills. She was also to get counseling. (Tr. 276-277). Plaintiff called the office seeking a refill of Effexor in December

2011.   Dr. Robacker authorized a prescription for Effexor, 150 mg, 30 tablets, 5 refills.   There is no office note for that date and no indication of why the dosage was increased from 75 to 150 mg. (Tr. 273).   Plaintiff called the office seeking medication refills in June 2012.   Prescriptions for Lisinopril and Effexor 150 mg, 30 tables, 2 refills, were authorized by Dr. Robacker.   There is no office note for that date.   (Tr. 266).

Dr. Robacker next saw plaintiff in October 2012 for a check-up.   She was still taking Effexor 150 mg once per day.   Her chronic problems included hypertension, fibromyalgia, depression, and irritable bowel syndrome.   On exam, she was oriented to time, place, person, and situation.   She had normal insight and judgment.   Mood and affect were appropriate.   Memory was intact.   (Tr. 260-263).   She was seen about two weeks later to follow-up on lab work. Again, she was oriented, with normal insight and judgment, and appropriate mood and affect. (Tr. 259).   The same findings on exam were noted in March 2013.   In August 2013, the findings were the same, except for some mildly impaired memory.   (Tr. 252).   In December 2013, Dr. Robacker noted that plaintiff was "having extreme stress in her marriage" and wanted stress counseling.   He referred her for counseling.   He again noted that she was oriented, with normal insight and judgment, and appropriate mood and affect.   Her memory was intact.   (Tr. 245-248).

Plaintiff began seeing a counselor in February 2014.   (Tr. 348).

### 4.      State Agency Consultants' Assessment

In April 2014, state agency consultant Donald Henson, PhD., performed the "psychiatric review technique" assessment based on a review of the record.[3]   He concluded that "There is insufficient medical/psychological evidence on which to evaluate the nature/severity of any disabling mental impairment prior to DLI [date last insured]."     (Tr. 83).

In October 2014, a second consultant reviewed the record and agreed with Dr. Henson.

---

[3] The psychiatric review technique is described in 20 C.F.R. § 404.1520a.

(Tr. 93).

<u>Analysis</u>

Plaintiff's sole issue is that the ALJ incorrectly determined that her depression was not a severe impairment.   See, Doc. 10, p. 1.

An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."   20 C.F.R. § 404.1520(c).   Basic mental work activities required by most jobs include "understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting."   SSR 85-28, 1985 WL 56856, *3.

The failure to designate an impairment as "severe" is not, standing alone, an error requiring remand.   At step 2 of the sequential analysis, the ALJ must determine whether the claimant has one or more severe impairments.   This is only a "threshold issue," and, if the ALJ finds at least one severe impairment, he must continue on with the analysis.   And, at Step 4, he must consider the combined effect of all impairments, severe and non-severe.   Therefore, a failure to designate a particular impairment as "severe" at Step 2 does not matter to the outcome of the case as long as the ALJ finds that the claimant has at least one severe impairment.   *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012), citing *Castile v. Astrue*, 617 F.3d 923, 927-928 (7th Cir. 2010).

Of course, regardless of the designation of impairments as severe, the ALJ is required to consider the combined effects of all impairments in determining plaintiff's RFC.   "When assessing if a claimant is disabled, an ALJ must account for the combined effects of the claimant's impairments, including those that are not themselves severe enough to support a disability claim." *Spicher v. Berryhill*, 898 F.3d 754, 759 (7th Cir. 2018).   Here, however, plaintiff does not argue that the evidence establishes that she had any specific limitation arising from depression as of the

date last insured.

Plaintiff was last insured for DIB as of December 31, 2011. To be eligible for DIB, she must establish that she was disabled as of her date last insured. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997). It is not sufficient to show that an impairment was present as of the date last insured; rather plaintiff must show that the impairment was severe enough to be disabling as of the relevant date. *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011).

The ALJ designated plaintiff's depression as non-severe because it had "no more than a minimal limitation upon the claimant's ability to perform basic work activities." He correctly noted that plaintiff received no treatment from a mental health specialist prior to the date last insured. He noted that her primary care physician prescribed Effexor in August 2011 and increased the dose in December 2011. (Tr. 18). As plaintiff points out, the ALJ incorrectly stated that there were no requests for refills of that medicine, but that error is *de minimis*. The ALJ also correctly noted that the treatment notes do not indicate reported complaints of symptoms related to depression before the date last insured, a fact ignored by plaintiff. Further, as the ALJ pointed out, Dr. Robacker's notes consistently described her as alert and oriented. Almost a year after her date last insured, as stated above in the review of the medical evidence, Dr. Robacker noted on exam that she was oriented, with normal insight and judgment, appropriate mood and affect, and intact memory. The medical records support the ALJ's determination that plaintiff's depression was not a severe impairment as of the date last insured.

Lastly, plaintiff asserts, without elaboration, that, if her depression were to be found to be severe, she would be deemed disabled under the Medical-Vocational Guidelines ("Grids"), 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, because of her advanced age. She is incorrect. She would be deemed disabled under the Grids (and under the VE's testimony) if she were limited to

unskilled work because of her impairments. However, it is not a "given" that depression qualifying as a severe impairment necessarily limits a person to unskilled work. Plaintiff does not even attempt to argue that the record supports a finding that she was limited to unskilled work as of December 31, 2011.

Plaintiff has not identified any errors requiring remand or demonstrated that the ALJ's decision was not supported by substantial evidence. Therefore, the Commissioner's final decision must be affirmed.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Plucker committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying plaintiff's application for disability benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATED: JANUARY 25, 2019**

*s/ J. Phil Gilbert*
**J. PHIL GILBERT**
**U.S. DISTRICT JUDGE**